# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-327V

|  |  |
|---|---|
| RICHARD SADLER, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: June 25, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Glen Howard Sturtevant, Jr., Rawls Law Group, Richmond, VA,* for Petitioner.

*Mitchell Jones, U.S. Department of Justice, Washington, DC,* for Respondent.

## RULING ON ENTITLMENT[1]

On January 8, 2021, Richard Sadler filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges a Table injury - that he suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving an influenza ("flu") vaccine on

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

December 4, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

After a full review of the evidence, I find that Petitioner has satisfied all Table requirements for a SIRVA Table injury, and is otherwise entitled to compensation for his injury.

## I.    Relevant Procedural History

After the case's initiation and SPU assignment, Respondent filed a Rule 4 Report opposing entitlement. ECF No. 37. Specifically, Respondent argued that 1) the vaccination record does not indicate in which arm Petitioner received the flu vaccine, 2) the actual date of vaccination has not been established, and 3) the evidence preponderates against a finding that the onset of Petitioner's shoulder pain occurred within 48 hours of his vaccination. ECF No. 37 at 7-8.

I therefore set deadlines for the filing of briefs addressing Petitioner's entitlement to compensation. ECF No. 38.[3] On July 12, 2023, Petitioner filed a Motion for a Ruling on the Record and a Brief in support of his Motion. ECF Nos. 42-43. In his brief, Petitioner argued that he has satisfied all requirements under the Vaccine Act and established entitlement to compensation for a Table SIRVA injury. ECF No. 43. Respondent reacted to Petitioner's brief on September 27, 2023. ECF No. 46. Respondent again argued that Petitioner has neither established the "situs" of his vaccination, the date of vaccination, or that the onset of Petitioner's shoulder pain occurred within 48 hours of his vaccination. *Id*. at 7-9. Petitioner did not file a reply brief.

## II.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[3] I initially requested that the parties also brief damages in this matter. However, after a preliminary review of the damages' issues in this claim, I determined that I would address only Petitioner's entitlement to compensation in this Ruling, and requested that Respondent's brief only address entitlement. Non-PDF Scheduling Order issued August 22, 2023.

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. Section 11(c)(1)(A)(B)(D)(E).

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time-frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

###  III.    Relevant Factual Evidence

I have fully reviewed the evidence, including all medical records and affidavits, and the parties' briefing. I find most relevant the following:

### A.  Records

- On December 4, 2019, Petitioner was seen by his primary care provider, Matthew C. Simmons, M.D, for "congestion, headache, sinus pressure, and sinus pain x1 week." Ex. 1 at 126. The contemporaneous treatment record for this visit fails to document the administration of any vaccines. *Id.* at 126-27.

- A "Patient Chart" maintained by Ottawa Family Physicians, however, documents that Petitioner received a flu vaccine on December 4, 2019. Ex. 12 at 2. This record does not contain any additional information related to that vaccination event. *Id.*

- Additionally, the medical records documenting Petitioner's treatment at Ottawa Family Physicians include a letter from Dr. Simmons, dated January 7, 2021. Ex. 1 at 22. Dr. Simmons's letter states: "Richard Sadler received a seasonal influenza vaccination on 12/4/19. He had right shoulder pain at the site of the injection that started on the day that he received the injection. He has had continued pain in this area." *Id.*

- On December 20, 2019 (16 days after his purported December 4th vaccination), Petitioner was seen by his PCP for "pain at injection site from flu vaccine given 12/04/19." Ex. 1 at 124. The "subjective" report provided by Petitioner to Dr. Simmons states: "Richard Sadler is a 54 year old male who presents for right shoulder pain since getting influenza vaccine on 12/4/19. He is having trouble moving his right arm much at all. No other concerns." *Id.* A musculoskeletal exam demonstrated that Petitioner had full range of motion with pain, and decreased strength in his right shoulder. *Id.* Petitioner received a steroid injection to treat his shoulder and was instructed to follow up as needed. *Id.* at 125.

- On February 19, 2020, Petitioner was seen by his rheumatologist, Christopher Koenig, M.D. Ex. 2 at 39-40. A musculoskeletal "review of systems" was positive for "Decreased mobility, Joint pain, Low back pain, Morning stiffness, [and] Neck Pain." *Id.* at 40. No mention of pain specific to Petitioner's shoulder is provided and the record notes that Petitioner had "[n]o tenderness, swelling, effusion, or limitation of motion" in his shoulders. *Id.* at 41. Dr. Koenig also notes under "Plan Orders[:] Flucelvax Quad 2019 - 2020 Status: Administered." *Id.* at 42.

- On May 13, 2020, Petitioner returned to see Dr. Koenig for "[p]ain in neck and Rt shoulder." Ex. 2 at 44. Dr. Koenig's history states that

  > Richard suffers from right shoulder pain. This past winter, he fell on the ice. Since that time, he has had some right shoulder pain. Around that time, he also received his flu shot into the right deltoid. He is unclear if 1 of these processes contributed to rotator cuff tendinitis or some other injury that may have caused this chronic shoulder pain.

  *Id.* Petitioner was assessed with chronic right shoulder pain and a suspected rotator cuff tendonitis and received a second steroid injection. *Id.* at 54.

- On June 12, 2020, Petitioner saw Dr. Simmons again and, in addition other complaints, reported continued right shoulder pain. Ex. 1 at 114. It was noted that "this has been an ongoing problem that has been worse lately." *Id.* Petitioner received a third steroid injection. *Id.* at 116.

- On August 10, 2020, Petitioner again returned to see Dr. Simmons and reported that "[h]e ha[d] ongoing right shoulder pain despite joint injection and meloxicam". Ex. 1 at 102. It is noted that his range of motion "was full but somewhat painful" and he was referred to physical therapy for further shoulder treatment. *Id.* at 103.

- On August 12, 2020, Petitioner began physical therapy (PT) for pain and stiffness in his right shoulder at SERC Physical Therapy. Ex. 1 at 164. The "Date of Onset" is recorded as December 1, 2019. *Id.* Petitioner reported that the pain at "Worst" was "9/10" and at "Best" was "0/10." *Id.* On examination Petitioner's right shoulder range of motion measured as follows: flexion: 150/180˚ and Abduction 164/180˚. Petitioner was assessed with right shoulder bursitis. *Id.* Petitioner subsequently completed nine physical therapy sessions – the last on September 2, 2020. *Id.* at 156.

- On September 1, 2020, Petitioner underwent a right shoulder MRI, and the report history states "[r]ight shoulder pain since December 2019, pain after flu shot." Ex. 1 at 178.

- On September 15, 2020, Petitioner was seen by orthopedist Kenneth Wertzberger, M.D. Ex. 8 at 10. Petitioner's history provided by Dr. Wertzberger states that he "did not have any shoulder problems at all he says [until] he had a flu shot in December of 2019. After that everything went down hill." Ex. 8 at 13. Dr. Wertzberger diagnosed Petitioner with a right rotator cuff tear and scheduled Petitioner for surgery the following month. *Id.* at 14-15.

- On October 7, 2020, Petitioner had an arthroscopic subacromial decompression and biceps tenodesis of his right shoulder. Ex. 9 at 122.

- Thereafter, Petitioner continued to treat his right shoulder injury through at least March 25, 2022. Ex. 13 at 11.

### B. Declarations

Petitioner filed two signed and sworn declaration, addressing his purported December 4, 2019 vaccination and subsequent shoulder pain and treatment. Exs. 5, 11. Petitioner states that he received a flu vaccine at the office of Dr. Simmons on December 4, 2019. Ex. 5 at 1. Specifically, Petitioner recounts that he observed when the vaccine was administered by the nurse, it was given "extremely high on my right shoulder and it was extremely painful." Ex. 5 at 1. He recalls that his "arm was hurting very badly" on his way home from Dr. Simmons's office. *Id.* Once home, Petitioner states he told his family about "how my arm was hurting after the shot" and his daughter, who is a nurse, "looked at the injection site and stated the shot was given too high in the arm." *Id.*

Petitioner contacted his doctor approximately one week later when pain still had not gone away. Ex. 5 at 1. Petitioner states he was seen by Dr. Simmons and received a

cortisone injection "to help with the pain." *Id.* Thereafter, Petitioner states, he did not receive further treatment until May 2020 "due to some but not total relief from the steroid injection[,] as well as due to Covid [r]estrictions on medical care." Ex. 11.

Petitioner further states that when he saw Dr. Koenig in May 2020, he mentioned he had "tweaked my neck and lower back when I fell in December 2019." Ex. 11. Petitioner states that his fall caused him "neck and back pain, but caused no pain in my shoulder." Id. He further states that his "shoulder pain started after the flu shot on December 4, 2019, which was before the fall on ice." *Id.* He states his neck and back pain resolved on their own over time, however his shoulder pain persisted. *Id.*

Petitioner describes his continued shoulder pain and treatment, which culminated in arthroscopic decompression surgery on October 7, 2020. Ex. 5 at 1-2.

Petitioner also filed a signed and sworn declaration from his wife, Wendy Sadler. Ex. 6. Ms. Sadler states that in December 2019, Petitioner received a vaccine at the office of Dr. Simmons. She recalls that "Ricky called me on his away home and stated that his arm was hurting him." *Id.* at 1. She states that Petitioner "felt like it was given too high on his arm" and that when he returned home their daughter "showed us where on his arm it shoulder have been administered which was quite a bit lower than where it was given." *Id.* Ms. Sadler goes on to detail Petitioner's continued Shoulder pain and treatment. *Id.* at 1-2.

## IV.    Findings of Fact

### A. Date of Vaccination and Situs

One disputed issue in this case is whether Mr. Sadler received a flu vaccine in his right shoulder on December 4, 2019, and therefore whether his "[p]ain and reduced range of motion are limited to the [right] shoulder in which the intramuscular [flu] vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii).

Respondent argues that Petitioner's vaccination record fails to document in which arm he received the vaccine. His subsequent treatment records stating he had shoulder pain after receiving the flu vaccine "do not corroborate this claim," but instead "only document his assertions to treating physicians." ECF No. 46 at 9. Respondent next argues that the record corresponding to Petitioner's February 19, 2020 visit with Dr. Koenig states "Flucelvax Quad 2019-2020 Status: Administered" thus placing the date of vaccination in question. *Id.* Finally, Respondent asserts that the letter from Dr. Simmons stating that Petitioner received a flu vaccination on December 4, 2019, followed by right

shoulder pain at the site of vaccination that began that same day, is not persuasive evidence. *Id.* Specifically, Respondent argues that Dr. Simmons's letter dated one day before Petitioner filed his claim, and after he had obtained representation, "suggest[s], if not explicitly document[s] a primary motivation to support the litigation of his vaccine injury claim rather than clarify any factual defect." *Id.*

Notwithstanding Respondent's arguments, a review of the record as a whole demonstrates preponderant evidence that Petitioner likely received a flu vaccine on December 4, 2019, and in his right shoulder. As a preliminary matter, I observe that there is *no* evidence suggesting that Petitioner received any vaccination in his *left* shoulder. Moreover, Petitioner consistently reported that his right shoulder pain began after the vaccination. As discussed in other decisions, consistent reporting to treating physicians that a shoulder injury was associated with a vaccination received in the same shoulder can serve as probative evidence sufficient to overcome even a contradictory vaccination record – a factor that does not present in this case. *See e.g.*, *Desai*, 2020 WL 4919777, at *13-14; *Mogavero v. Sec'y of Health & Human Servs.*, No. 18-1197V, 2020 WL 4198762, at *3 (Fed. Cl. Spec. Mstr. May 12, 2020); *Hanna v. Sec'y of Health & Human Servs.*, No. 18-1455V, 2021 WL 3486248, at *9-10 (Fed. Cl. Spec. Mstr. July 15, 2021); *Mezzacapo v. Sec'y of Health & Human Servs.*, No. 18-1977V, 2021 WL 1940435, at *7 (Fed. Cl. Spec. Mstr. Apr. 19, 2021).

There is other record evidence corroborative of the fact of vaccination. For example, *only 16 days after his vaccination* (on December 20, 2019), Petitioner was seen by Dr. Simmons for "*pain at injection site from flu vaccine given 12/04/19*." Ex. 1 at 124 (emphasis added). The record states further that "Richard Sadler is a 54 year old male who presents for *right shoulder pain since getting influenza vaccine on 12/4/19*. *Id.* (emphasis added). Additionally, while the letter from Dr. Simmons, may have been written at the request of Petitioner after he had decided to file the instant claim – it is consistent with Dr. Simmons's own record from December 20, 2019 (discussed immediately above) as well as with Petitioner's declarations. Moreover, I find that the record from Petitioner's February 2020 visit with Dr. Koenig noting "Flucelvax Quad 2019-2020 Status: Administered" supports only that Petitioner's seasonal vaccination for that year had been administered and not any particular date of administration.

Based on the totality of the evidence, I find that Petitioner has preponderantly established that he received a flu vaccine on December 4, 2019, and in his right shoulder. In light of this finding, I also find Petitioner has satisfied the third SIRVA QAI criterion and established his "[p]ain and reduced range of motion [from his flu vaccination] are limited

to the [right] shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii).[5]

## B.    Onset

The second disputed issue is whether Petitioner's first post-vaccination manifestation of onset (specifically pain) occurred within 48 hours of his vaccination, as required by the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a)(XIV)(B) (seasonal influenza vaccines); 42 C.F.R. § 100.3(c)(10)(ii) (SIRVA QAI); ECF No. 46 at 7-9.

Respondent argues that

[P]etitioner's most contemporaneous medical records fail to demonstrate that the onset of his alleged shoulder pain was within 48 hours of his flu vaccination. Petitioner had no documented visits to a medical provider within the 48-hour post-vaccination period. Rather, the record documents that [P]etitioner first presented to his PCP on December 20, 2019, sixteen days after vaccination.

ECF No. 46 (citing Ex. 1 at 124).

But in so maintaining, Respondent appears to misunderstand the requirements under the Vaccine Act for establishing onset. As I have previously observed, "the Vaccine Act clearly does *not* require that symptoms be recorded within a specific timeframe to be preponderantly established. Rather, it requires only that onset *occurs* in the relevant timeframe." *Niemi v. Sec'y of Health & Hum. Servs.,* No. 19-1535V, 2021 WL 4146940, at *4 (Fed. Cl. Spec. Mstr. Aug. 10, 2021) (citing Section 13) (emphasis in original). Nor does the Act require that the medical records document an exact date that the onset of a petitioner's shoulder pain began. A special master may thus find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2).

In this case, Petitioner's allegation that his shoulder pain occurred within 48 hours of his vaccination is strongly supported by the same record dismissed by Respondent –

---

[5] I note that Respondent does not dispute that Petitioner suffered both pain and limited range of motion in his shoulder, nevertheless, I find that based upon my review of the record that Petitioner has established she suffered both symptoms.

the December 20, 2019 Dr. Simmons record. Ex. 1 at 124. At that time (only 16 days after vaccination), Petitioner returned to the same office where his received his vaccination reporting "pain at injection site from flu vaccine given 12/04/19." Ex. 1 at 124. The "subjective" report provided by Petitioner to Dr. Simmons further states: "Richard Sadler is a 54 year old male who presents for right shoulder pain *since getting influenza vaccine on 12/4/19*. *Id.*(emphasis added).

I acknowledge that on May 13, 2020, Petitioner was seen by Dr. Koenig for "[p]ain in neck and Rt shoulder." Ex. 2 at 44. The medical record of that visit states that the "past winter, Petitioner feel on ice. Since that time, he has had some right shoulder pain. Around that time, he also received a vaccination into the right deltoid. He is unclear if 1 of these processes contributed to rotator cuff tendinitis or some other injury that may have caused this chronic shoulder pain." *Id.* However, in his declaration, Petitioner explains that he received the vaccine prior to his fall, and his right arm pain began after vaccination. Ex. 11. He further states that his fall caused him "neck and back pain, but caused no pain the shoulder." *Id.* He explains that his neck and *back* pain resolved on their own over time, however his shoulder pain persisted. *Id.*

I find that Petitioner's explanation in his declaration is supported by the medical records, which fail to further associate Petitioner's fall with his shoulder pain, but rather consistently document that Petitioner reported to his providers at multiple appointments that he experienced the onset of his shoulder pain contemporaneous or "since" his December 2019 (when he received the vaccination at issue). *See, e.g.,* Ex. 1 at 124 (December 4, 2019 report to Dr. Simmons of "right shoulder pain since getting influenza vaccine on 12/4/19."); Ex. 1 at 164 (August 12, 2020, 2019 physical therapy record for his right shoulder treatment documenting a "Date of Onset" of December 1, 2019"[6]); Ex. 1 at 178 (September 1, 2020, MRI report with a history of "[r]ight shoulder pain since December 2019, pain after flu shot."); Ex. 8 at 13 (history provided to orthopedist, Dr. Wertzberger on September 15, 2020, stating that he "did not have any shoulder problems at all he says [until] he had a flu shot in December of 2019. After that everything went down hill."); Ex. 1 at 22 (January 7, 2021 letter from Dr. Sadler stating "Richard Sadler received a seasonal influenza vaccination on 12/4/19. He had right shoulder pain at the site of the injection that started on the day that he received the injection. He has had continued pain in this area.").

Thus, based on the record as a whole, I find that Petitioner has established the onset of his injury occurred within 48 hours of his vaccination. 42 C.F.R. §

---

[6] This date appears to be a minor typographical error as Petitioner's flu vaccination was on December 4, 2019, not December 1, 2019. Ex. 12 at 2. I also acknowledge that this record does not explicitly reference Petitioner's receipt of the flu vaccine.

100.3(a)(XIV)(B) (seasonal influenza vaccines); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

### C. Other Table Requirements and Entitlement

Petitioner has established all other requirements for a Table SIRVA claim. 42 C.F.R. § 100.3(c)(10). There is no history of shoulder pain, inflammation, or dysfunction that would explain the post-vaccination injury. 42 C.F.R. § 100.3(c)(10)(i). And there is not preponderant evidence of another condition that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(iv). However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, residual effects of injury lasting six months, *etc*. *See generally* Section 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed in this claim. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation. A Damages Order will issue.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
